# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| *In re* : | |
| : | Chapter 11 |
| WASHINGTON MUTUAL, INC., et al., : | |
| : | Case No. 08-12229 (MFW) |
| Debtors. : | |
| : | |
| ———————————————— : | |
| : | |
| FEDERAL DEPOSIT INSURANCE : | |
| CORPORATION, as Receiver, : | |
| : | No. 1:09-cv-0616-GMS |
| Appellant, : | |
| : | BK Adv. Proc. No. 09-50551 |
| v. : | BK AP No. 09-0061 |
| : | |
| WASHINGTON MUTUAL, INC., et al., : | |
| : | |
| Appellees. : | |
| : | |
| ———————————————— : | |
| : | |
| FEDERAL DEPOSIT INSURANCE : | |
| CORPORATION, as Receiver, : | |
| : | No. 1:09-cv-0617-GMS |
| Appellant, : | |
| : | BK Adv. Proc. No. 09-50934 |
| v. : | BK AP No. 09-0060 |
| : | |
| WASHINGTON MUTUAL, INC., et al., : | |
| : | |
| Appellees. : | |
| : | |

## REQUEST OF THE FEDERAL DEPOSIT INSURANCE CORPORATION, AS RECEIVER, FOR CERTIFICATION FOR DIRECT APPEAL TO THE THIRD CIRCUIT PURSUANT TO 28 U.S.C. § 158(d)(2)

M. Blake Cleary  (Bar No. 3614)
YOUNG CONAWAY STARGATT
& TAYLOR, LLP
1000 West Street, 17th Floor
Wilmington, Delaware  19801
Telephone:  (302) 571-6600
Facsimile:  (302) 571-1253
(Additional counsel listed on signature page)
Attorneys for the FDIC-Receiver

Dated:  August 26, 2009

## Table of Contents

Page

Table of Authorities .................................................................................................. ii

QUESTION PRESENTED ........................................................................................ 1

PRELIMINARY STATEMENT ................................................................................ 1

RELIEF REQUESTED ............................................................................................. 3

STATEMENT OF FACTS ........................................................................................ 3

      A.      The WMB Receivership, WMI's Receivership Claims and
             WMI's District Court Action Against the FDIC ..................................... 3

      B.      Proceedings Below.................................................................................. 5

ARGUMENT – THE ORDERS SHOULD BE CERTIFIED FOR DIRECT APPEAL
           TO THE THIRD CIRCUIT ................................................................... 8

I.     Appeal of the Bankruptcy Court's Orders Concerns a Controlling
     Question of Law Involving a "Matter of Public Importance" ......................... 10

      A.      Neither the Third Circuit Nor the Supreme Court Has Addressed the
             Application of the Jurisdictional Bar in These Circumstances............................ 10

      B.      The Appeal Involves an Issue of Significant Public Importance......................... 16

II.    Immediate Appeal Will Materially Advance the Progress of the
     Adversary Proceedings ................................................................................... 18

CONCLUSION........................................................................................................ 19

## Table of Authorities

Page

Cases

Blausey v. United States Trustee,
552 F.3d 1124 (9th Cir. 2009) ................................................................9

F.D.I.C. v. Shain, Schaeffer & Rafanello,
944 F.2d 129 (3d Cir. 1991)................................................................13

Hudson United Bank v. Chase Manhattan Bank,
43 F.3d 843 (3d Cir. 1994)........................................................3, 7, 13

In re Blue Stone Real Estate, Constr. & Devt. Corp.,
396 B.R. 555 (M.D. Fla. 2008) ............................................................17

In re Davis,
512 F.3d 856 (6th Cir. 2008) ................................................................9

In re Virissimo,
332 B.R. 208 (Bankr. D. Nev. 2005) ..................................................17

In re Wright,
492 F.3d 829 (7th Cir. 2007) ..............................................................17

National Union Fire Ins. Co. v. City Sav., F.S.B.,
28 F.3d 376 (3d Cir. 1994).......................................................... passim

Praxis Props. Inc. v. Colonial Sav. Bank,
947 F.2d 49 (3d Cir. 1991)............................................................13, 17

Ransom v. MBNA America Bank, N.A. (In re Ransom),
380 B.R. 809 (9th Cir. B.A.P. 2007)......................................................9

Rosa v. R.T.C.,
938 F.2d 383 (3d Cir.), cert. denied, 502 U.S. 981 (1991) ............ passim

Samson Resources Co. v. SemCrude, L.P., et. al. (In re SemCrude),
No. 08-51445, 2009 WL 1740750 (Bankr. D. Del. June 19, 2009)....................9, 17

Trinsey v. K. Hovnanian at Upper Merion, Inc.,
841 F. Supp. 694 (E.D. Pa. 1994) .......................................................14

Page

*Viking Offshore (USA) Inc. v. Bodewes Winches, B.V. (In re Viking Offshore (USA) Inc.),* 405 B.R. 434 (Bankr. S.D. Tex. 2009) ...............................................18

*Village of Oakwood v. State Bank & Tr. Co.,* 539 F.3d 373 (6th Cir. 2008) .......................................................10, 14, 15

*Weber v. United States Trustee* 484 F.3d 154 (2d Cir. 2007).......................................................2, 9, 18

<u>Statutes and Rules</u>

12 U.S.C. § 1821(d)(5)(A) .......................................................13

12 U.S.C. § 1821(d)(5)(D)(i) .......................................................4

12 U.S.C. § 1821(d)(6)(A) .......................................................4-5, 10

12 U.S.C. § 1821(d)(13)(D) ....................................................... *passim*

28 U.S.C. § 158(a) .......................................................7

28 U.S.C. § 158(d)(2) ....................................................... *passim*

Bankruptcy Rule 8001 .......................................................1, 2, 8

Bankruptcy Rule 8003(d) .......................................................7

Bankruptcy Rule 8007(b).......................................................8

Fed. R. App. P. 5 .......................................................8

<u>Other Authorities</u>

H.R. Rep. No. 101-54(I), 101st Cong., 1st Sess. 418, *reprinted in* 1989 U.S. Code Cong. & Admin. News 86 .......................................................16

Defendant and intervenor-defendant the Federal Deposit Insurance Corporation, in its

capacity as receiver for Washington Mutual Bank (the "FDIC-Receiver"), respectfully requests,

pursuant to 28 U.S.C. § 158(d)(2) and Bankruptcy Rule 8001, that this Court certify for direct

appeal to the United States Court of Appeals for the Third Circuit two Orders of the

United States Bankruptcy Court for the District of Delaware (Walrath, J.), entered on July 6,

2009 (the "Orders") [D.I. 68, D.I. 62].[1]  The Orders denied the FDIC-Receiver's motions to stay

two separate adversary proceedings.  Copies of the Orders are attached hereto as Exhibits A

and B.

## QUESTION PRESENTED

12 U.S.C. § 1821(d)(13)(D) deprives all courts but specified federal district courts of

subject matter jurisdiction over (1) any claim or action seeking a determination of rights with

respect to assets of a bank for which the FDIC has been appointed receiver and (2) any claim

relating to any act or omission of the FDIC as receiver.  Two adversary proceedings seek a

determination of rights with respect to assets of Washington Mutual Bank and assert claims

relating to acts or omissions of the FDIC as its receiver.  Did the Bankruptcy Court err in holding

that it has jurisdiction?

## PRELIMINARY STATEMENT

1.      Subject to a certification process, section 158(d)(2) of the Judicial Code permits

direct appeal to the appropriate Circuit of the United States Court of Appeals from certain

judgments, orders and decrees of the bankruptcy courts.  *See* 28 U.S.C. § 158(d)(2).  Upon its

own motion or the motion of a party, the court before which the matter is pending *shall* make the

---

[1] Except where discussing an event in only one of the two adversary proceedings at issue,
citations to docket entries refer first to entries on the docket in *JPMorgan National Bank, N.A. v.
Washington Mutual, Inc.*, Adv. Proc. No. 09-50551 (MFW), and second to entries on the docket
in *Washington Mutual, Inc. v. JPMorgan Chase Bank, N.A.*, Adv. Proc. No. 09-50934 (MFW).

certification required for direct appeal under section 158(d)(2) if any of the statute's criteria is met. *See* 28 U.S.C. § 158(d)(2)(B); Bankruptcy Rule 8001(f)(2).

2.    The Orders of the Bankruptcy Court that are at issue here fall directly within the category of orders that should be certified for direct appeal. "[A] discrete, controlling question of law is at stake," an appellate decision by the Third Circuit would "materially advance the progress of the case," and the ruling reflected in the Orders is "manifestly erroneous," such that "the parties would profit from its immediate review" at the appellate level. *Weber v. United States Trustee*, 484 F.3d 154, 158 (2d Cir. 2007).

3.    The jurisdictional bar that is set forth in the Federal Deposit Insurance Act provides that except to the extent pursued through an exclusive FDIC receivership claims process, "*no court* shall have jurisdiction over" (i) "any claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any" failed depository institution for which the FDIC has been appointed receiver, or (ii) "any claim relating to any act or omission of such institution or the Corporation as receiver." 12 U.S.C. § 1821(d)(13)(D) (emphasis added). In the Orders, the Bankruptcy Court refused to apply the plain language of this statute, denying motions by the FDIC-Receiver to stay two adversary proceedings in which the debtor Washington Mutual, Inc. ("WMI") and JPMorgan Chase Bank, N.A. ("JPMC") assert competing claims with respect to various assets of WMI's former subsidiary, Washington Mutual Bank ("WMB"), that JPMC purchased from the FDIC-Receiver.

4.    Certification of the Orders for direct appeal to the Third Circuit is warranted for several reasons. First, an unbroken line of Third Circuit decisions instruct that section 1821(d)(13)(D) is to be applied literally, in accordance with its plain language. *See, e.g., National Union Fire Ins. Co. v. City Sav., F.S.B.*, 28 F.3d 376, 388-89 (3d Cir. 1994) ("We

therefore assume Congress meant what it said when it included a jurisdictional bar to 'any action.'"); *see also Hudson United Bank v. Chase Manhattan Bank*, 43 F.3d 843, 848 n.10 (3d Cir. 1994) (Third Circuit "construe[s] § 1821(d)(13)(D) of FIRREA literally") (discussing *Rosa v. R.T.C.*, 938 F.2d 383, 393-94 (3d Cir.), *cert. denied*, 502 U.S. 981 (1991)). The Third Circuit has not yet been called upon, however, to apply the statute in the circumstances presented – a bankrupt holding company's adversary proceeding against the acquiror bank where that adversary proceeding seeks a determination of rights with respect to receivership assets and relates to acts or omissions of the FDIC as receiver in violation of the plain language of the statute. Second, the issue is of obvious public importance given the difficult economic circumstances facing our nation and the resulting increase in the number of bank failures. Finally, there can be little doubt that the Third Circuit will be called upon to address the issue before these cases reach their conclusion. Allowing the appellate court to do so now will materially advance the ultimate conclusion of this litigation.

## RELIEF REQUESTED

5.    The FDIC-Receiver respectfully requests this Court to certify the Orders of the Bankruptcy Court for direct appeal to the United States Court of Appeals for the Third Circuit pursuant to 28 U.S.C. § 158(d)(2). The FDIC-Receiver further requests that the certification be made in a separate document in accordance with Bankruptcy Rule 8001(f)(3)(F).

## STATEMENT OF FACTS

### A.    The WMB Receivership, WMI's Receivership Claims and WMI's District Court Action Against the FDIC

6.    WMI was a thrift holding company, the principal thrift subsidiary of which was WMB. In an order issued on September 25, 2008, the Director of the Office of Thrift Supervision closed WMB and appointed the FDIC-Receiver as its receiver. On the same date,

the FDIC-Receiver entered into a Purchase and Assumption Agreement dated as of September 25, 2008 with JPMC (the "P&A Agreement"), under which JPMC purchased substantially all of WMB's assets and assumed most of its liabilities, including all of WMB's deposit liabilities.

7.      In accordance with its governing statute, the FDIC-Receiver established December 30, 2008 as the bar date for filing claims against the WMB receivership. On that date, WMI filed a proof of claim with the FDIC-Receiver asserting claims relating to a variety of WMB assets that WMI asserted it owned.

8.      The claims asserted by WMI against the WMB receivership included, *inter alia*, claims for: (1) income tax refunds and other tax related assets; (2) certain trust preferred securities with a liquidation preference of $4 billion that had been issued by a subsidiary of WMB; (3) recovery of $6.5 billion in capital contributions made by WMI to WMB before the receivership, as allegedly fraudulent transfers; (4) certain employee benefit plans, insurance policies and trusts; and (5) the balances held in certain alleged demand deposit accounts that WMI claimed it had maintained with WMB or its subsidiary Washington Mutual Bank fsb ("WMBfsb"), which according to WMI amounted to approximately $4 billion. By letter dated January 23, 2009, the FDIC-Receiver disallowed all of WMI's claims because they had not been proved to the satisfaction of the receiver. *See* 12 U.S.C. § 1821(d)(5)(D)(i).

9.      Under the Federal Deposit Insurance Act, as amended, *inter alia*, by the Financial Institutions Reform, Recovery and Enforcement Act of 1989, Pub. L. No. 101-73, 103 Stat. 183 ("FIRREA"), a claimant whose receivership claim has been disallowed must within 60 days either pursue an administrative appeal of the disallowance within the FDIC or commence an action in United States District Court seeking a judicial determination of the claims. *See* 12

U.S.C. § 1821(d)(6)(A).[2]  Other than as thus provided, "no court shall have jurisdiction" over

any claim or action concerning a receivership.  12 U.S.C. § 1821(d)(13)(D).

10.    WMI recognized the jurisdictional significance of these provisions.  On

March 20, 2009, WMI and WMI Investment Corp. filed a complaint against the FDIC (both as

receiver and in its corporate capacity) in the United States District Court for the District of

Columbia seeking a judicial determination of WMI's disallowed receivership claims pursuant to

12 U.S.C. § 1821(d)(6)(A) and asserting a variety of other claims.  The action is styled

*Washington Mutual, Inc. v. F.D.I.C.*, No. 1:09-cv-0533 (RMC) (D.D.C.) (the "District Court

Action").

11.    On June 11, 2009, the FDIC-Receiver filed its answer with respect to WMI's

receivership claims and filed a motion to dismiss other claims that had been included in the

complaint but had not been part of WMI's receivership claims.[3]  The FDIC-Receiver filed an

amended answer on July 13, 2009.  The District Court Action is pending.

**B.    Proceedings Below**

12.    On September 26, 2008, the Debtors filed their petitions under chapter 11 of the

Bankruptcy Code in the United States Bankruptcy Court for the District of Delaware.  Those

bankruptcy cases are pending before United States Bankruptcy Judge Mary F. Walrath.

13.    On March 24, 2009, JPMC commenced an adversary proceeding in the

Bankruptcy Court against the Debtors and the FDIC, both as receiver and in its corporate

---

[2] The statute specifies that such an action must be brought either in the United States District Court for the District of Columbia or in the district in which the failed bank had its principal place of business, which in the case of WMB would be the Western District of Washington.  *Id.*

[3] The FDIC-Receiver also moved to dismiss WMI's claim for recovery of capital contributions on the ground that the allegations of the complaint itself demonstrated that WMI had failed to state a claim for fraudulent transfer with respect to those contributions.

capacity, styled *JPMorgan Chase Bank, N.A. v. Washington Mutual, Inc.*, Adv. Proc. No. 09-50551 (MFW) (the "JPMC Adversary Proceeding"). JPMC's complaint sought declaratory and other relief with respect to many of the assets that were the subject of WMI's receivership claim and the ensuing District Court Action.

14.    On May 29, 2009, the Debtors filed their answer in the JPMC Adversary Proceeding and asserted a number of counterclaims against JPMC [D.I. 23]. In many respects, the Debtors' counterclaims essentially track the claims the Debtors are pursuing against the FDIC-Receiver in their pending District Court Action. The counterclaims include, among others, a claim that the entire P&A Agreement between JPMC and the FDIC-Receiver was a fraudulent transfer that should be unwound by the Bankruptcy Court.

15.    Separately, on April 27, 2009, the Debtors commenced an adversary proceeding against JPMC seeking immediate turnover of the alleged balances held in six demand deposit accounts that the Debtors contend are property of their estate and that were already a subject of the Debtors' District Court Action and of the JPMC Adversary Proceeding, styled *Washington Mutual, Inc. v. JPMorgan Chase Bank, N.A.*, Adv. Proc. No. 09-50934 (MFW) (the "Turnover Proceeding").

16.    On June 1, 2009, the FDIC-Receiver filed motions in the Bankruptcy Court to stay all proceedings in both the JPMC Adversary Proceeding and the Turnover Proceeding until judgment is entered by the district court in the Debtors' earlier-filed District Court Action[4] [D.I.

---

[4] Because the FDIC-Receiver was not at that time a party in the Turnover Proceeding, it simultaneously filed a motion to intervene in that action for the purpose of making its motion to stay, or in the alternative to dismiss, that proceeding. In a separate order, the Bankruptcy Court granted the FDIC-Receiver's motion to intervene for this purpose.

25; D.I. 27].  The motions argued, among other things, that litigation of the issues in the

Bankruptcy Court would violate the jurisdictional bar of 12 U.S.C. § 1821(d)(13)(D).

      17.     The Bankruptcy Court heard argument on the motions on June 24, 2009.  At the

hearing, the Bankruptcy Court stated that it would deny the motions, erroneously concluding that

FIRREA is not "a jurisdictional bar to the debtors' claims to property that is no longer in the

hands of the FDIC as receiver, but [is] in the hands of JPMC," Tr. at 93, and that the Third

Circuit's opinion in *Hudson United Bank v. Chase Manhattan Bank*, 43 F.3d 843 (3d Cir. 1994)

"made it clear that FIRREA only bars claims against a receiver or an institution in receivership."

*Id.*[5]  The Bankruptcy Court also stated that FIRREA does not "bar[] any claims, or any dispute

over what assets were transferred," *id.* at 94, and that the jurisdictional bar did not apply to "the

turnover action where the debtor asserts that it has title to funds in the possession of JPMC" or

"in the counterclaims in the JPMC adversary, [where] the debtor is asserting a claim against

JPMC to assets that the debtor claims are property of the estate."  *Id.*  The court also expressed

the view that it "ha[s] exclusive jurisdiction to decide what is property of the estate."  *Id.* at 95.

      18.     On July 6, 2009, the Bankruptcy Court entered the Orders denying the motions of

the FDIC-Receiver to stay the two adversary proceedings and denying the motion of JPMC to

stay the Turnover Proceeding [D.I. 68; D.I. 62].  On July 10, 2009, the FDIC-Receiver and

JPMC each timely filed notices of appeal from the Orders together with motions, in the

alternative, for leave to appeal if it is determined that the Orders are not appealable as of right[6]

---

     [5] An excerpt of the transcript of the June 24, 2009 hearing reflecting the Bankruptcy
Court's bench ruling is attached hereto as Exhibit C.

     [6] The FDIC-Receiver's appeal and, in the alternative motion for leave to appeal, are
pending before this Court.  Under Bankruptcy Rule 8003(d), however, "[i]f leave to appeal is
required by 28 U.S.C. § 158(a) and has not earlier been granted, the authorization of a direct
appeal by a court of appeals under 28 U.S.C. § 158(d)(2) shall be deemed to satisfy the
requirement for leave to appeal."

[D.I. 71, 75; D.I. 72, 76]. On August 17, 2009, the Clerk of this Court issued a notice that the record on appeal had been docketed in accordance with Bankruptcy Rule 8007(b).

## ARGUMENT

### THE ORDERS SHOULD BE CERTIFIED FOR DIRECT APPEAL TO THE THIRD CIRCUIT

19.     Section 158(d)(2) and the Bankruptcy Rules thereunder set forth a two-step process for appealing an order of the bankruptcy court directly to the applicable Circuit of the United States Court of Appeals. First, the lower court before which the "matter is pending" must certify that one of the statutory prerequisites for such a direct appeal is met. Second, once such a certification has been obtained from the lower court, the appellant must petition for permission to appeal in the appropriate Circuit pursuant to Rule 5 of the Federal Rules of Appellate Procedure. *See* 28 U.S.C. § 158(d)(2)(B); Bankruptcy Rule 8001(f).

20.     The "matter is pending" in this Court for purposes of section 158(d)(2)(B). *See* Bankruptcy Rule 8001(f)(2). Under section 158(d)(2)(B), this Court is required to grant certification of the Orders for direct appeal if any one of the three statutory criteria are met. *See* 28 U.S.C. § 158(d)(2)(B) (if court "determines that a circumstance specified in clause (i), (ii), or (iii) of subparagraph (A) exists . . . then the [court] *shall* make the certification described in subparagraph (A)") (emphasis added).

21.     Direct appeal is appropriate here. While the Bankruptcy Court failed to follow Third Circuit authority that instructs that the jurisdictional bar is to be applied literally, there is no decision of either the Third Circuit or the Supreme Court applying the jurisdictional bar in the circumstances presented here – a bankrupt holding company's adversary proceeding against the acquiror bank where that adversary proceeding seeks a determination of rights with respect to receivership assets and relates to acts or omissions of the FDIC as receiver in violation of the

plain language of the statute. The appeal of the Orders also "involves a question of law . . . [that] involves a matter of public importance" and "an immediate appeal . . . may materially advance the progress of the case . . ." 28 U.S.C. §§ 158(d)(2)(A)(i), (iii); *see, e.g., Ransom v. MBNA America Bank, N.A. (In re Ransom)*, 380 B.R. 809, 812 (9th Cir. B.A.P. 2007); *Samson Resources Co. v. SemCrude, L.P. (In re SemCrude)*, No. 08-51445, 2009 WL 1740750, at *15 (Bankr. D. Del. June 19, 2009).

22.    The focus of the direct appeal procedure "is explicit: on appeals that raise controlling questions of law, concern matters of public importance, and arise under circumstances where a prompt, determinative ruling might avoid needless litigation." *Weber v. United States Trustee*, 484 F.3d 154, 158 (2d Cir. 2007); *see also In re Davis*, 512 F.3d 856, 858 (6th Cir. 2008) (discussing standard in denying petition for permission to appeal). "Congress believed direct appeal would be most appropriate where [the court of appeals is] called upon to resolve a question of law not heavily dependent on the particular facts of a case . . . ." *Weber*, 484 F.3d at 158. In analyzing the standard, the Second Circuit concluded that direct appeal would be most appropriate in cases, such as this one, where a "ruling is manifestly correct or manifestly erroneous" and therefore "the parties would profit from its immediate review" in the court of appeals. *Id.*; *see also Blausey v. United States Trustee*, 552 F.3d 1124, 1131 (9th Cir. 2009) (accepting direct appeal which "presents a question of law, making it unlikely that further proceedings in the district court will cast more light on the issue").

23.    The Orders of the Bankruptcy Court at issue here are manifestly erroneous. The Bankruptcy Court ignored the plain language of the jurisdictional bar provided under 12 U.S.C. § 1821(d)(13)(D) and allowed collateral litigation to proceed between the Debtors and JPMC notwithstanding the fact that the Debtors previously had commenced an action against the FDIC

concerning essentially identical factual disputes in the United States District Court for the

District of Columbia citing the statutory provision for actions for a judicial determination of

disallowed receivership claims, 12 U.S.C. § 1821(d)(6)(A). The Bankruptcy Court's decision

contradicts several prior decisions of the Third Circuit applying the jurisdictional bar literally,

and direct appeal will allow that court to reconcile the Bankruptcy Court's decision with its prior

decisions.

## I.   Appeal of the Bankruptcy Court's Orders Concerns a Controlling Question of Law Involving a "Matter of Public Importance"

24.    Direct appeal is warranted where, as here, the order in question "involves a

question of law as to which there is no controlling decision of the court of appeals for the circuit

or the Supreme Court of the United States, or involves a matter of public importance." 28 U.S.C.

§ 158(d)(2)(A)(i).

### A.   Neither the Third Circuit Nor the Supreme Court Has Addressed the Application of the Jurisdictional Bar in These Circumstances

25.    The Orders conflict with the plain language of 12 U.S.C. § 1821(d)(13)(D), and

the Third Circuit has repeatedly instructed that the provision is to be applied by courts literally.

These Third Circuit decisions are, of course, binding, and the Bankruptcy Court's failure to

follow them was error. Nevertheless, neither the Third Circuit nor the Supreme Court has

applied the jurisdictional bar in a case such as this one in which claims that plainly violate the

statute are asserted in litigation against the assuming bank under a purchase and assumption

agreement. *See Village of Oakwood v. State Bank & Tr. Co.*, 539 F.3d 373, 386 (6th Cir. 2008)

(holding that jurisdictional bar applied to claims against assuming bank). Nor has the Third

Circuit or the Supreme Court applied the jurisdictional bar to a case such as this one involving

the extent of a bankruptcy court's authority to administer a bankruptcy estate. Because of both

circumstances in this case – the pendency of litigation against an assuming bank that violates the

statute and the Bankruptcy Court's assertion of authority – prior decisions of the Third Circuit

are not directly controlling. Direct appeal will allow the Third Circuit to reconcile the

Bankruptcy Court's erroneous decision with that court's prior decisions applying the

jurisdictional bar.

26.    Section 1821(d)(13)(D) provides:

(D)    **Limitation on judicial review**

Except as otherwise provided in this subsection, no court shall
have jurisdiction over –

(i)    any claim or action for payment from, or any action
seeking a determination of rights with respect to, the assets of any
depository institution for which the Corporation has been appointed
receiver, including assets which the Corporation may acquire from itself
as such receiver; or

(ii)    any claim relating to any act or omission of such institution
or the Corporation as receiver.

12 U.S.C. § 1821(d)(13)(D).

27.    By its terms, the jurisdictional bar deprives courts of subject matter jurisdiction

over *three types* of claim or action: (1) "any claim or action for payment from . . . the assets of

any depository institution for which the Corporation has been appointed receiver"; (2) "any

action . . . seeking a determination of rights with respect to[] the assets of any depository

institution for which the Corporation has been appointed receiver . . ."; and (3) "any claim

relating to any act or omission of such institution or the Corporation as receiver." 12 U.S.C.

§ 1821(d)(13)(D).

28.    The claims and counterclaims asserted in the two adversary proceedings below

violate both the *second* and *third* of these provisions. Those claims plainly seek "a determination

of rights with respect to the assets of" WMB, a failed thrift for which the FDIC-Receiver has

been appointed receiver. They also "relat[e] to acts or omissions of the" FDIC-Receiver by

taking issue with its post-receivership sale of assets to JPMC. In the proceedings below and in opposing the FDIC-Receiver's motion for leave to appeal, the Debtors have not discussed those two subparts of the statute. Instead, they base their arguments on cases that concern the *first* of the three subparts, barring claims or actions for *payment from the assets* of a failed bank, which has never been a basis for the FDIC-Receiver's arguments in these cases.

29.     The Debtors principally rely on a mischaracterization of the Third Circuit decision in *Rosa v. R.T.C.*, 938 F.2d 383 (3d Cir.), *cert. denied*, 502 U.S. 981 (1991), in attempting to justify the Bankruptcy Court's Orders. Contrary to the Debtors' arguments, however, and unlike the Bankruptcy Court below, *Rosa* applied section 1821(d)(13)(D) literally, in accordance with the plain language of the statute.

30.     In *Rosa*, beneficiaries of a bank pension plan had obtained a preliminary injunction from a federal district court preventing a number of different parties from terminating the plan and ordering those defendants "to make all contributions due and owing, as well as future contributions when they become due," to the plan. 938 F.2d at 390. Two previous banks could not be held responsible for those liabilities because they were in receivership and the injunction in question therefore would require "payment from . . . the assets of [a] depository institution for which the Corporation ha[d] been appointed receiver." 12 U.S.C. § 1821(d)(13)(D)(i). A third bank was not in receivership, however. As to that bank, an order requiring payment of the underfunded pension *liabilities* would not require "payment *from* . . . *the assets*" of a bank in receivership, and the jurisdictional bar therefore did not apply. *Rosa*, 938 2d at 394. That holding is consistent with the plain language of section 1821(d)(13)(D). But it does not have any application in the case before this Court, in which the other subparts of the jurisdictional bar are at issue.

31.     In contrast with our case, no part of *Rosa* could be characterized as an "action

seeking a *determination of rights with respect to the assets* of any depository institution for

which the Corporation has been appointed receiver . . . ." Unlike the Debtors here, no one in

*Rosa* was claiming that an asset sold by the receiver to a successor bank under a purchase and

assumption agreement really belonged to them, an argument that the Third Circuit recognizes

would have to be made, if at all, through the exclusive receivership claims process under section

1821(d). *See Hudson United Bank v. Chase Manhattan Bank*, 43 F.3d 843, 849 (3d Cir. 1994)

("[T]he purpose of § 1821(d)(5)(A) and (d)(13)(D) was to force plaintiffs to file their claims

under FIRREA's administrative claims procedures before filing them in federal court."); *Praxis*

*Props. Inc. v. Colonial Sav. Bank*, 947 F.2d 49, 63 (3d Cir. 1991) ("FIRREA expressly limits a

claimant's ability to circumvent the above administrative claims procedure, providing for a strict

limitation on judicial review . . . ."); *F.D.I.C. v. Shain, Schaeffer & Rafanello*, 944 F.2d 129, 134

(3d Cir. 1991) ("In short, it is FDIC's position that SS&R may not circumvent FIRREA's claim

procedure merely by asserting a valid state common law lien, even though in almost every other

circumstance, SS&R would prevail by summary disposition with such a lien. We agree.").[7]

32.     In contrast with *Rosa* and *Hudson*, in its later decision in *National Union Fire*

*Insurance Company. v. City Savings, F.S.B.*, 28 F.3d 376 (3d Cir. 1994), the Third Circuit did

---

[7] The Debtors and the Bankruptcy Court below mistakenly rely on dicta from the Third
Circuit decision in *Hudson*. *See* Tr. at 93 (observing incorrectly that *Hudson* "made it clear that
FIRREA only bars claims against a receiver or an institution in receivership"). In a footnote, the
*Hudson* court wrote that in *Rosa* the court had held that "[1821(d)(13)(D)](i) applied only to
claims against failed institutions while (ii) applied to claims against failed institutions specified
in (i) as well as to claims against the receiver of such institutions." *Id.* at 848 n.10. Neither *Rosa*
nor section 1821(d)(13)(D) is so limited, however, as the *Rosa* opinion itself makes clear. *See
Rosa*, 938 F.2d at 393 ("Thus the bar embodied in clause (i) reaches (1) claims for payment from
the assets of City Federal or City Savings Bank, (2) actions for payment from those assets and
(3) actions *for a determination of rights with respect to those assets*.") (emphasis added). The
dicta that Debtors attempt to rely on from *Hudson* does not alter that indisputable fact.

confront a case – like this one – that violated the "determination of rights" subprovision of the jurisdictional bar. In *National Union*, insurance companies appealed the dismissal of their declaratory judgment action seeking to rescind insurance policies issued to a failed bank, arguing (as did the Debtors below in this case) that the jurisdictional bar did not apply because the action did not assert a "claim for payment" from the receivership. *See Id.*, at 385-86 (citing *Rosa*). The Third Circuit rejected this argument, holding that it was "obliged to give effect, if possible, to every word Congress used," *id.* at 389, and the plain language of section 1821(d)(13)(D), "in addition to barring 'any claim . . . for payment'" provides for "a bar against 'any action seeking a determination of rights with respect to [] the assets of any depository institution for which the Corporation has been appointed receiver,'" *id.* (quoting 12 U.S.C. § 1821(d)(13)(D)(i)).

33.    In the two adversary proceedings pending before the Bankruptcy Court here, both the Debtors and JPMC manifestly seek a determination of rights with respect to a variety of assets of WMB. Nor does the FDIC-Receiver's sale of WMB's assets to JPMC soon after it was appointed receiver affect the statute's application. *See, e.g., Trinsey v. K. Hovnanian at Upper Merion, Inc.*, 841 F. Supp. 694, 695 (E.D. Pa. 1994) (applying jurisdictional bar in action concerning assets that had been sold to third party by RTC as receiver). Indeed, while the Third Circuit has not yet had occasion to apply the jurisdictional bar in the specific circumstances presented in this case, in *Village of Oakwood* the Sixth Circuit last year held that the jurisdictional bar did prohibit a similar action against the assuming bank under a purchase and assumption agreement. 539 F.3d at 386. In *Village of Oakwood*, uninsured depositors of a failed bank sued the assuming bank under a purchase and assumption agreement for losses they allegedly sustained as a result of their bank's failure; the FDIC was not initially named. Finding that the claims against the assuming bank were subject to FIRREA's exclusive claims process,

the district court granted summary judgment, and the Sixth Circuit affirmed. In doing so, the appellate court considered and rejected the argument that claims against the assuming bank were beyond the scope of the jurisdictional bar because they were not "claims against a depository institution for which the [FDIC was] receiver," concluding that "[t]he problem with this novel argument is that all of their claims against State Bank are directly related to acts or omissions of the FDIC as receiver of Oakwood." *Id.* at 386. Therefore, to "permit[] claimants to avoid [the] provisions of [12 U.S.C. § 1821](d)(6) and (d)(13) by bringing claims against the assuming bank . . . would encourage the very litigation that FIRREA aimed to avoid." *Village of Oakwood*, 539 F.3d at 386.

34.    In addition to asserting claims that seek a "determination of rights" with respect to assets of WMB, the adversary proceedings here, as in *Village of Oakwood*, also violate the jurisdictional bar because they relate to acts or omissions of the FDIC-Receiver. Indeed, in numerous respects, the Debtors' claims and counterclaims challenge the FDIC-Receiver's sale of assets of WMB to JPMC pursuant to the P&A Agreement, even going so far as to claim that the entire P&A Agreement was a fraudulent transfer that should be unwound. As the Third Circuit has made clear in its prior decisions, there is only one permissible route to assert such a claim – the exclusive claims process provided for under FIRREA.[8]

---

[8] Section 1821(d)(13)(D)(ii) bars "any claim relating to any act or omission of such institution or the Corporation as receiver." The *Rosa* court construed the "'relating' language of that clause to refer to claims against the very institution whose acts are challenged, which must be an institution for which the RTC has been appointed receiver." *Rosa*, 983 F.2d at 394. In *Rosa*, the third bank was not in receivership so this provision did not apply. Here, however, WMB is in receivership and the Debtors' claims against JPMC plainly relate to acts or omissions of WMB or the FDIC as its receiver.

**B.    The Appeal Involves an Issue of Significant Public Importance**

35.    The Third Circuit has recognized on many occasions that the FIRREA claims

process is exclusive and that the jurisdictional bar provided under 12 U.S.C. § 1821(d)(13)(D) is

intended to protect that exclusivity. *See supra* at ¶31 at 13-14.  Third Circuit decisions also

acknowledge that Congress created this exclusive claims procedure to protect the FDIC-Receiver

from the burden and distraction of collateral litigation of matters that are subject to that process,

such as the Bankruptcy Court disputes at issue here. *See Nat'l Union*, 28 F.3d at 388 ("One of

the important goals of FIRREA is to enable the receiver to efficiently determine creditors' claims

and preserve assets of the failed institution without being burdened by complex and costly

litigation."); *Rosa*, 938 F.2d at 396 ("The primary purpose underlying FIRREA's exhaustion

scheme is to allow RTC to perform its statutory function of promptly determining claims so as to

quickly and efficiently resolve claims against a failed institution without resorting to litigation.")

(citing H.R. Rep. No. 101-54(I), 101st Cong., 1st Sess. 418-19, *reprinted in* 1989 U.S. Code

Cong. & Admin. News 86, 214-15).

36.    Most of the appellate decisions examining the jurisdictional bar arose in the wake

of the savings and loan crisis, a serious economic dislocation that led to the enactment of

FIRREA.  Today our nation is again addressing the effects of a similar, if not more serious,

financial crisis.  In the year to date, the FDIC has been appointed receiver for 81 closed

depository institutions, and federal and state regulators have been closing depository institutions

at a rate not seen since the end of that earlier crisis.

37.    Like WMB, many failed banks have parent holding companies, and those holding

companies often file for bankruptcy protection after their bank subsidiary is closed by regulators.

It is clear, therefore, that the Bankruptcy Court's exercise of jurisdiction over matters as to which

jurisdiction is barred under the plain language of section 1821(d)(13)(D) will have ramifications

beyond these cases. *In re Virissimo*, 332 B.R. 208, 209 (Bankr. D. Nev. 2005) (certifying issue for direct appeal given "immense" implications of ruling at issue); *see also In re Wright*, 492 F.3d 829, 831-32 (7th Cir. 2007) (accepting direct appeal where appellate resolution of issue would "[l]ower litigation costs for thousands of debtors and creditors"); *In re SemCrude*, 2009 WL 1740750, at *1 (certifying appeal involving "issues of great significance to the parties, both in economic terms and as a business reality"); *In re Blue Stone Real Estate, Constr. & Dev. Corp.*, 396 B.R. 555, 561 (M.D. Fla. 2008) (certifying question of "who is the appropriate person to navigate a corporation through the turbulent waters of a Chapter 11 case [because it] is one of the most vital decisions of the bankruptcy process").

38.     By opening the field to simultaneous litigation of disputes in Bankruptcy Court that are, unquestionably, subject to FIRREA's exclusive receivership claims process, the Orders deprive the FDIC-Receiver of a statutory protection that Congress intended to allow the receiver to focus on its statutory duties for the good of claimants, the deposit insurance fund and, ultimately, the taxpayers of the United States. *See Nat'l Union*, 28 F.3d at 388; *Praxis*, 947 F.2d at 56 (noting "widespread concern about the costs – including legal costs – of administering the thrift industry recovery program").

39.     The effect of the Bankruptcy Court's ruling here will be to subject future purchase and assumption agreements to collateral attack in bankruptcy courts and other courts around the nation instead of requiring competing claimants, such as the Debtors here, to pursue claims against the FDIC as receiver in the manner that FIRREA expressly requires. The risk of such collateral litigation could have a chilling effect on potential buyers of failed bank assets in the future.

## II.    Immediate Appeal Will Materially Advance the Progress of the Adversary Proceedings

40.    Considering the obvious significance of the issue, it is inevitable that the Third Circuit will be called upon at some stage of this litigation to address the Bankruptcy Court's determination that it was not bound by the plain language of the jurisdictional bar. Direct appeal now will materially advance the progress, and ultimate conclusion, of the two adversary proceedings below.

41.    In a decision exploring the purpose for enactment of the direct appeal statute, the Second Circuit recognized that appeals involving discrete and controlling questions of law, such as the question presented here, were those best suited for direct appeal precisely because such a procedure would speed resolution of the underlying litigation. *See Weber*, 484 F.3d at 158. As the court in *Weber* observed, in such a case, parties adversely affected by a ruling "might very well fold up their tents if convinced that the ruling has the approval of the court of appeals, but will not give up until that becomes clear." *Id.*; *see also Viking Offshore (USA) Inc. v. Bodewes Winches, B.V. (In re Viking Offshore (USA) Inc.)*, 405 B.R. 434, 443 (Bankr. S.D. Tex. 2009) ("Resolution of whether the litigation regarding ownership of the winches must proceed in this court is likely to materially advance the progress of both the instant adversary proceeding and the underlying Chapter 11 case.").

42.    In this instance, until the Third Circuit has addressed the Bankruptcy Court's erroneous application of the jurisdictional bar, the Debtors and their creditor constituencies will be operating under the mistaken impression that the Bankruptcy Court has subject matter jurisdiction over matters that, under federal law, it does not. Ultimately, this could well result in the matters below proceeding to judgment in the Bankruptcy Court, only to be later reversed on appeal given that court's lack of subject matter jurisdiction. Immediate appeal to the Third

Circuit will prevent this waste of resources for both the parties and the courts and hasten the ultimate conclusion of this litigation.

## CONCLUSION

For the foregoing reasons, the FDIC-Receiver respectfully requests that this Court certify the Orders for direct appeal to the United States Court of Appeals for the Third Circuit pursuant to 28 U.S.C. § 158(d)(2).

Date:  Wilmington, Delaware
       August 26, 2009

YOUNG CONAWAY STARGATT
& TAYLOR, LLP

Of Counsel:

COLLEEN J. BOLES
Assistant General Counsel
LAWRENCE H. RICHMOND
Senior Counsel
BARBARA SARSHIK
Counsel
FEDERAL DEPOSIT INSURANCE
CORPORATION
Legal Division
3501 Fairfax Drive, VS-D-7014
Arlington, VA  22226
(703) 562-2309

Robert S. Brady (Bar No. 2847)
M. Blake Cleary (Bar No. 3614)
Jaime N. Luton (Bar No. 4936)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware  19801
Telephone:  (302) 571-6600
Facsimile:  (302) 571-1253
rbrady@ycst.com
mbcleary@ycst.com
jluton@ycst.com


- and -

Thomas R. Califano
John J. Clarke, Jr.
DLA PIPER LLP (US)
1251 Avenue of the Americas
New York, New York  10020
Telephone:  (212) 335-4500
Facsimile:  (212) 335-4501

Attorneys for the FDIC-Receiver